**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEMAINE MONTEIL CANNON,

        Petitioner - Appellant,

v.

ANITA TRAMMELL, Warden,
Oklahoma State Penitentiary,

        Respondent - Appellee.

No. 13-5071

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 99-CV-00297-TCK-PJC)**

---

Jack Fisher, Fisher Law Office, Edmond, Oklahoma, and Paul S. McCausland,
Young, Bogle, McCausland, Wells & Blanchard, Wichita, Kansas, for Appellant.

Jennifer J. Dickson, Assistant Attorney General (E. Scott Pruitt, Attorney General
of Oklahoma, with her on the brief), Oklahoma City, Oklahoma, for Appellee.

---

Before **TYMKOVICH**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Jemaine Cannon was convicted in 1996 of murdering his then-girlfriend, Sharonda Clarke, and was sentenced to death. After a lengthy state appeals process, he filed a federal habeas petition in the Northern District of Oklahoma, which denied relief. In an appeal to this court in 2004, we concluded Cannon raised substantial questions about the performance of his trial and appellate counsel and remanded to the district court for further proceedings. We directed the court to consider whether Cannon's counsel unconstitutionally (1) failed to investigate alleged contacts between jurors and prosecution witnesses and (2) denied him the right to testify at trial in his defense.

The district court concluded that Cannon had not diligently pursued his claims relating to juror contacts in state court, denied his request for an evidentiary hearing on those claims, and denied relief. The court did, however, hold an evidentiary hearing on Cannon's right-to-testify claim but ultimately denied relief after finding trial counsel had provided adequate assistance concerning the right to testify.

Cannon raises two issues on appeal. First, he argues the district court erred in resolving his juror-contact ineffectiveness claims without an evidentiary hearing and in refusing to grant relief on those claims. We agree with the district court that Cannon was not diligent in developing the factual basis for these claims in state court and thus was not entitled to an evidentiary hearing. Given the resulting absence of any reliable evidence in the record showing that improper

contacts occurred, the district court did not err in denying relief on these claims.

Cannon's second argument is that the district court erred in finding that counsel (1) informed him of his right to testify, (2) did not prevent him from exercising that right, and (3) properly advised him as to the consequences of testifying. We find no error in the district court's factual and legal conclusions on this issue.

As a result, exercising jurisdiction under 28 U.S.C. § 2253, we AFFIRM.

# I. Background

## A. Factual Background

Jemaine Cannon, who had recently escaped from custody for an unrelated assault conviction, stabbed his girlfriend, Sharonda Clark, to death on February 3, 1995. When she was found more than twenty-four hours later, police discovered that she had been stabbed three times in the throat and once in the center of her chest. After the murder but before his arrest, Cannon spoke to his mother, telling her he had acted in self-defense and that Clark had fallen on the knife after she had attacked him. Although Cannon eventually turned himself in to police, he first called Tulsa police and provided an account of the attack to Detective Tom Fultz. In that conversation, Cannon admitted to stabbing Clark but claimed that he only did so after she attacked him and he snapped.

A jury convicted Cannon of first-degree murder and sentenced him to death.

### B. Procedural History

After his conviction, Cannon appealed directly to the OCCA, which rejected all of his claims. He then petitioned that court for post-conviction relief, presenting a number of ineffective assistance of counsel claims concerning both trial and appellate counsel. Three of these claims are now at issue.

In 1999, Cannon filed a petition for a writ of habeas corpus in federal district court, which the district court subsequently dismissed. Cannon then appealed to this court. We reversed the district court's determination that Cannon's failure to present his ineffective assistance claims on direct appeal, as required by Oklahoma law, meant that he was necessarily procedurally barred from raising those claims on federal habeas review. *See Cannon v. Mullin* (*Cannon I*), 383 F.3d 1152, 1174 (10th Cir. 2004). As we noted, a failure to comply with a state procedural rule requiring a petitioner to raise ineffective assistance claims on direct appeal will not always bar federal review. Such claims are only barred when the petitioner has had "an opportunity to consult with separate counsel on appeal." *Id.* at 1172 (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)) (internal quotation marks omitted).

Based on the record available in *Cannon I*, we found cause to believe that trial and appellate counsel were not separate because they both worked for the same federal public defender's office. Nonetheless we noted that the district

court could hold an evidentiary hearing and allow Oklahoma an opportunity to establish otherwise. *Id.* at 1174.

After determining that Cannon's claims likely were not procedurally barred, we also considered whether he was entitled to an evidentiary hearing to establish his claim that certain state witnesses had improperly contacted his jurors. *Id.* at 1174–77. Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court can only grant an evidentiary hearing when the petitioner has acted diligently in developing the state court record. *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) (interpreting 28 U.S.C. § 2254(e)(2)). An evidentiary hearing was necessary to Cannon's success on the juror-contact claims because—aside from a second-hand account contained in an affidavit from Cannon—nothing in the record hinted that any improper contacts had actually occurred. Despite their apparent availability, Cannon never provided the Oklahoma courts with affidavits, statements, or testimony from any of the family members or friends who allegedly witnessed the improper juror contacts. We noted in *Cannon I* that a "diligent person would have done as much, absent an impediment preventing him from doing so." 383 F.3d at 1177. As a result, we remanded the issue to the district court with instructions to determine whether there were any such impediments excusing Cannon's failure to develop the record that would thus entitle him to an evidentiary hearing on his juror-contact claims. We also concluded Cannon was entitled to an evidentiary hearing on his right to

testify because he had diligently developed the factual record underlying that claim by providing a first-hand affidavit to the OCCA.

On remand, the district court found that trial and appellate counsel were not separate because of their close working and personal relationships. As a result, none of Cannon's ineffective assistance claims were procedurally barred. But the court went on to find that Cannon was not entitled to an evidentiary hearing on the juror-contact issue because he was not diligent in developing the state court record and there were no impediments justifying this failure. Because there was no reliable evidence in the record of any improper juror contacts, the district court determined that both Cannon's ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims based on the alleged improper contacts were meritless.

Finally, the district court turned to Cannon's claim that trial counsel provided ineffective assistance concerning his right to testify. After review of the record, the court again found that Cannon had not met his burden of proving that counsel's performance was in any way deficient.

## II. Analysis

Cannon asserts two errors on appeal. First, he asserts both his trial and appellate counsel were deficient in pursuing his allegation that certain state witnesses improperly contacted jurors in his case, and that the district court erred on remand in denying an evidentiary hearing in which he could establish facts to

support these claims. Second, he argues the district court erred in finding both that trial counsel properly advised him concerning his right to testify and that counsel did not prevent him from testifying when he expressed a desire to do so. We consider each claim in turn.

### A. *Improper Juror Contact*

Cannon raises two ineffective assistance of trial counsel claims concerning improper contacts between jurors and state witnesses. First, he says trial counsel ignored evidence he gave them regarding the improper contacts. He contends he had information from five friends and family members who observed several witnesses interacting with jurors. He claims his trial counsel were constitutionally ineffective for failing to pursue this information.

Next, he claims his direct appellate counsel compounded the error by refusing to raise trial counsel's ineffective assistance before the OCCA. Cannon argues he thus lost the opportunity for appellate review on a potentially meritorious claim.

We agreed in *Cannon I* that the two ineffective assistance claims might have merit. But we were unable to review the substance of the claims because Cannon had yet to establish reliable evidence showing that any improper juror contacts actually occurred. As a result, we directed the district court to determine whether Cannon was entitled to an evidentiary hearing at which he would be able to supplement the record with evidence in support of his claims. But on remand,

the district court found Cannon had not been diligent in developing the factual record underlying his claim in state court and thus denied his request for an evidentiary hearing. More specifically, the court found no circumstances excusing his failure—on both direct and collateral review—to provide the Oklahoma courts with affidavits that might substantiate his claims.

We review the district court's legal conclusions de novo and its factual determinations for clear error. *Fairchild v. Workman*, 579 F.3d 1134, 1140 (10th Cir. 2009). We agree with the district court that Cannon was not entitled to an evidentiary hearing because he failed to diligently develop the record supporting his claims in state court. Because of this failure, there are no facts in the record from which we could conclude that any improper juror contacts occurred, much less that counsel performed deficiently in response to these alleged contacts. Accordingly, we must deny relief on this issue.

### 1. *Diligence*

Under AEDPA, a district court cannot hold an evidentiary hearing in a habeas proceeding if "the applicant has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). As the Supreme Court held in *Williams v. Taylor*, however, an applicant cannot be said to have "failed" to develop the factual basis of his claim "unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." 529 U.S. at 432. Diligence, at a minimum, requires that an applicant both seek "an

-8-

evidentiary hearing in state court in the manner prescribed by state law," and develop the record by submitting "evidence that would be readily available if the claim were true." *Cannon I*, 383 F.3d at 1176–77.[1]

In *Cannon I*, we concluded that Cannon had not yet demonstrated he had diligently developed the record underlying his improper juror-contact claims. The only evidence of improper contacts submitted to the Oklahoma courts was an affidavit from Cannon himself, and that affidavit did not assert any first-hand knowledge of the allegations. We noted that despite their apparent availability, Cannon never provided the Oklahoma courts with affidavits or statements from any of the family members or friends who allegedly witnessed the improper juror contacts. "A diligent person would have done as much, absent an impediment preventing him from doing so." *Id.* at 1177. The district court's task on remand was to consider whether any legally significant impediments prevented Cannon from developing a record in state court on this issue.

---

[1] Cannon cites *Stouffer v. Trammell* for the proposition that a mere allegation of improper juror contact automatically entitles a prisoner to an evidentiary hearing, regardless of diligence. *See* 738 F.3d 1205, 1220 (10th Cir. 2013) (noting that the "proper remedy" for an allegation of jury tampering "is an evidentiary hearing"). *Stouffer*, however, cannot reasonably be read as establishing such a rule. Not only was the petitioner found to have been diligent, *id.* at 1219, but the court even explicitly stated that the petitioner "cannot receive a hearing if he 'failed to develop the factual basis of [his] claim in state court,'" *id.* (quoting 28 U.S.C. § 2254(e)(2)). There is no special exception to the diligence requirement for improper contact cases.

The district court found Cannon was not diligent and rejected his request for an evidentiary hearing on the juror-contact claims. It found that Cannon was not diligent in developing the record on direct appeal because he never provided counsel with a list of potential witnesses and because he failed to prepare and file a pro-se request to supplement the record. The court found that Cannon also failed to act diligently during his state collateral proceedings because he failed to include first-hand witness affidavits in his application for post-conviction review.

Cannon resists the district court's conclusion for a number of reasons. As an initial matter, he restates an argument we rejected in *Cannon I*. He contends he satisfied the diligence requirement merely by requesting an evidentiary hearing in state court, submitting a personal affidavit detailing his juror-contact claims, and by seeking a similar affidavit from trial counsel prior to submitting his state application for post-conviction relief. But that argument is foreclosed by *Cannon I*, in which we concluded Cannon's efforts were insufficient to establish diligence on the juror-contact claims unless he could show some kind of impediment excusing his failure to obtain eyewitness affidavits.

Cannon thus presents two fall-back arguments for why we should excuse his failure to develop a reliable factual record in state court, and thus grant him an evidentiary hearing now. First, he argues that Oklahoma's failure to provide him with separate trial and appellate counsel on direct review prevented him from raising the juror-contact issue in his initial appeal. Second, he says he was

-10-

prevented from developing a record on collateral review because his ineffective trial assistance claim was procedurally barred by OCCA rules.

Although we assume for purposes of our review that the lack of separate counsel excuses Cannon's failure to develop the record on direct appeal, we find there were no impediments that would prevent a diligent applicant from developing a reliable record on this claim during state post-conviction proceedings.

### a. Direct Appeal

Cannon was represented by lawyers from the Tulsa federal defender's office at both trial and on direct appeal. He argues that his appellate counsel's failure to develop the record should not be attributed to him because trial and appellate counsel were not separate and the Constitution requires that criminal defendants have "an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance." *English v. Cody*, 146 F.3d 1257, 1263 (10th Cir. 1998). On remand, the district court found that although he had different lawyers at trial and on appeal, they were not legally separate because of their close personal and professional relationship. Because counsel were not legally separate, the district court concluded the ineffective assistance of trial counsel claim was not procedurally barred. Nonetheless, the court found the lack of separate counsel did not excuse Cannon of his obligation to develop the record.

-11-

Traditionally, the requirement that trial and appellate counsel be separate has been used to excuse a petitioner's failure to bring an ineffective assistance claim on direct appeal. *See, e.g.*, *id.* (noting a lack of separateness trumps state procedural bar). We have yet to address whether the doctrine can also be used to excuse an appellant's failure to develop the record relating to such a claim. We have, however, found that there are two concerns motivating the requirement of separateness between trial and appellate counsel: "First, a defendant, on his own as a layman, will 'ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance.'" *Cannon I*, 383 F.3d at 1173 (internal citation omitted) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986)). "Second, a lawyer who renders ineffective assistance at trial will likely be hesitant to raise his own trial inadequacies on appeal, or even inform the client of any inadequacies." *Id.* Given these concerns, Cannon argues the district court erred in finding that he was still required to develop the record pro se on direct review concerning trial counsel's failures despite the lack of separateness. Oklahoma argues that even though trial and appellate counsel were not separate, Cannon knew he had a potentially meritorious claim but failed to provide appellate counsel with the names of potential witnesses. The State also contends that nothing prevented Cannon from personally supplementing the record on direct appeal—Oklahoma law establishes a procedure by which criminal appellants can file pro-se pleadings with the OCCA and even move to supplement

-12-

the record. The district court agreed with both of Oklahoma's arguments and found the lack of separateness did not excuse Cannon's failure to develop the record on direct appeal.

We need not decide whether Cannon's knowledge of his potential claim combined with Oklahoma's supplementation process makes him responsible for the failure to develop the record on direct review.[2] Nor do we address Cannon's argument that he demonstrated sufficient diligence on direct appeal by bringing the juror-contact issue to his conflicted appellate counsel's attention and that any failure to develop the record that occurred after that point is not attributable to Cannon. Rather, because we have determined that Cannon was not diligent in developing a record on collateral review, we assume for purposes of our discussion that a lack of separate trial and appellate counsel prevents us from attributing the failure to develop the record on direct appeal to Cannon.

### b.  *Collateral Review*

The district court also found that Cannon was not diligent because he failed to develop his ineffective assistance claim by submitting witness affidavits during the OCCA post-conviction process. We agree that his lack of diligence at this

---

[2] Oklahoma points to *Amos v. Roberts*, 189 F. App'x 830 (10th Cir. 2006), as establishing a duty for defendants to file supplemental pleadings if possible under state law. But *Amos* only found that a petitioner could have raised supplemental claims on direct appeal in circumstances where he had conflict-free counsel. Amos never presented an ineffective assistance claim or a separateness challenge, so counsel's failure to raise the defaulted claims was imputed to him. The court's discussion of state pro-se procedures was superfluous to this point.

-13-

stage, even if he were diligent on direct appeal, cannot be excused under § 2254(e)(2). As a result, the district court did not err in denying Cannon's request for an evidentiary hearing.

Cannon presents several arguments challenging this conclusion. First, he argues that the diligence requirement does not apply at all to post-conviction proceedings. Second, he argues that requiring a pro-se petitioner to develop the record on post-conviction review violates the Sixth Amendment right to counsel and that, as a practical matter, his pro-se status prevented him from obtaining affidavits from family members who did not understand the importance of providing supplemental evidence in post-conviction proceedings. Finally, he contends that the OCCA's improper procedural-bar finding—which precluded him from raising his ineffective trial-assistance claims on state collateral review—was an impediment that excuses his failure to develop the record on collateral review.

### i. Diligence in Post-Conviction Proceedings

Cannon contends that diligence is only required on direct appeal and that lack of diligence at the post-conviction stage is immaterial. We disagree.

First of all, nothing in the text of 28 U.S.C. § 2254(e)(2) distinguishes between appeals as of right and post-conviction proceedings—the statute simply requires that an applicant "develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). We see no obvious reason why AEDPA's diligence requirement would apply only to direct appeals and not also to post-

-14-

conviction proceedings, especially when the post-conviction review involves legal errors not resolved on direct appeal. If anything, the policy of requiring petitioners to play all of their cards in state court is better served when prisoners have a second chance at demonstrating trial error and an opportunity to challenge errors made in the direct appeal. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000) (explaining the diligence requirement allows state courts "their rightful opportunity to adjudicate federal rights"). We note that this conclusion is in line with the Fifth Circuit's finding in *Dowthitt v. Johnson*, which we cited favorably in *Cannon I*. *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (finding that a petitioner was not diligent for failing to submit affidavits during state post-conviction proceedings); *see also Lopez v. Ryan*, 630 F.3d 1198, 1206 (9th Cir. 2011); *Koste v. Dormire*, 345 F.3d 974, 985–86 (8th Cir. 2003); *Alley v. Bell*, 307 F.3d 380, 390–91 (6th Cir. 2002).

We thus conclude 28 U.S.C. § 2254(e)(2) required Cannon to act diligently in developing the factual record during post-conviction review. Any other holding would deny the state its initial rightful opportunity to fully adjudicate the federal claims at issue. *See Williams*, 529 U.S. at 437.

### ii. *Pro-Se Status and Developing the Record*

Next, Cannon argues that requiring a pro-se prisoner to develop the record during post-conviction review violates his Sixth Amendment right to counsel. In making this argument, Cannon points to the Supreme Court's decision in *Martinez*

*v. Ryan* for the proposition that a pro-se prisoner is in "no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record." 132 S. Ct. 1309, 1317 (2011). In that case, the Supreme Court concluded that, where a state does not allow for ineffective trial assistance claims to be brought on direct appeal, ineffective assistance of *post-conviction counsel* can excuse a petitioner's failure to bring a trial-assistance claim at that stage. *Id.* at 1317–19. Cannon also points to *Trevino v. Thaler*, in which the Supreme Court extended *Martinez* to circumstances where it was "virtually impossible" to assert ineffectiveness claims on direct review because of obstacles created by state law. 133 S. Ct. 1911, 1915 (2013).

Cannon argues that, because his trial and appellate counsel were not separate, his first realistic opportunity to raise his ineffective assistance claims was on post-conviction review. Citing the difficulty of investigating his claims from prison, which motivated both *Martinez* and *Trevino*, he argues that he could not have been required to develop the record pro se on post-conviction review.

We see two problems with this argument. First, Oklahoma law, in contrast to the Supreme Court cases, grants defendants the right to an attorney for  post-conviction challenges. As a result, petitioners are not required to develop either trial or appellate ineffective assistance claims on their own. And that is what happened here, at least initially. Cannon was provided appointed counsel through the Oklahoma Indigent Defense System for purposes of his post-conviction

-16-

appeal. *See* Okla. Stat. tit. 22, § 1089(B) (1995). After several months, however, dissatisfied with appointed counsel, he insisted on representing himself. At a hearing to consider his request to go pro se, the trial court advised him to keep appointed counsel and detailed the problems with representing oneself from prison. Cannon insisted on proceeding pro se and the trial court reluctantly conceded Cannon was entitled to represent himself. Nonetheless, the trial court appointed stand-by counsel who was available to assist Cannon in investigating and presenting his application to the OCCA.

In these circumstances, Cannon cannot refuse the assistance of counsel and then use his resulting pro-se status to argue that it would violate the Sixth Amendment to require him to develop the record. Nor has Cannon demonstrated how his confinement, as a practical matter, interfered in any particular way with his ability to obtain affidavits from his relatives and friends. As the district court found, Cannon did not need access to his legal files or records to obtain affidavits from his family members, and he never alleged any restrictions on his communications with them. In sum, Cannon's pro-se status during post-conviction review does not excuse the requirement that he act diligently to develop the record.

At oral argument, Cannon's attorney advanced the theory that Cannon had diligently sought affidavits from eyewitness family members but that his relatives refused to accommodate him. In support of this contention, he referenced three

family-member affidavits he provided in support of diligence after our remand in *Cannon I*. In those affidavits his relatives asserted that Cannon had asked them to prepare affidavits for his state post-conviction application but they either were unable or refused because they did not understand the usefulness of additional evidence after completion of trial and direct appeal.[3] Cannon contends their reluctance constituted an obstacle excusing his failure to more fully develop the record and that the affidavits prove he was diligently attempting to develop the state court record.

But Cannon did not pursue this argument in either his opening or reply brief to this court. Neither brief mentions that he previously requested affidavits from his family members, much less that his family members refused to provide them. This is especially problematic because the district court found that "Cannon's diligence in obtaining the affidavits began in earnest only after the Tenth Circuit noted in its 2004 opinion that he had not provided affidavits from any of the alleged witnesses." R., Vol. I, Doc. 222 at 9. The court also found "a reasonably diligent person would have been able to obtain the affidavits earlier"

---

[3] We note that, despite claiming that they did not understand the value of providing affidavits after Cannon had already been convicted and lost his appeal, two of the affiants attended a post-conviction hearing at which Cannon sought to waive his appointed counsel.

because "each of the affiants states he or she was willing to testify at a hearing." *Id.* at 11.[4]

This court will not consider issues initially raised at oral argument. *United States v. Irving*, 665 F.3d 1184, 1210 n.23 (10th Cir. 2011) (issues raised for the first time in oral argument are waived); *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1112 n.12 (10th Cir. 2005) (same). Not only is it "unfair to lie in wait until oral argument to present issues material to the appeal," but "[r]aising [an] issue for the first time at oral argument affords the [opposing party] an inadequate opportunity to address it." *United States v. Almaraz*, 306 F.3d 1031, 1040–41 (10th Cir. 2002). Consequently, we decline to consider this argument as it has been waived.

### iii. *Procedural Bar*

Finally, Cannon argues that the OCCA's finding that his ineffective assistance of trial counsel claims were procedurally barred served as an impediment that prevented him from developing a record in post-conviction proceedings. Oklahoma does not seriously contest the notion that a procedural bar can serve as an impediment to factual development. Instead, the State argues that, due to the circumstances of this case, the procedural bar *here* did not prevent Cannon from submitting the contested affidavits and thus developing the record.

---

[4] In the district court, Cannon only alleged that "Each [witness] had their own reasons for not providing affidavits to Mr. Cannon." R., Vol. I, Doc. 216 at 16.

As noted above, Cannon raised both of his ineffective assistance claims concerning improper juror contacts on state collateral review. Although the OCCA found Cannon's trial-assistance claim was procedurally barred, it considered Cannon's appellate-assistance claim on the merits. Ultimately, it rejected the appellate claim because Cannon failed to demonstrate that the juror-contact issue was any more meritorious than the claims his appellate counsel did raise.

Cannon also petitioned the OCCA for an evidentiary hearing relating to his juror-contact claims. Because not all of Cannon's claims were procedurally barred, the court considered this request on the merits but rejected it because Cannon's personal affidavit did not establish by clear and convincing evidence that the testimony he sought to introduce was likely to be relevant. Oklahoma argues that Cannon could have submitted the contested affidavits as part of his application for an evidentiary hearing on his appellate-assistance claim.

Given this contention, it is necessary to take a brief detour into Oklahoma post-conviction procedure. Under Oklahoma law, a petitioner in a capital case who wishes to supplement the record may file "an application for an evidentiary hearing, together with affidavits setting out those items alleged to be necessary for disposition of the issue petitioner is advancing." R. Okla. Crim. App. 9.7(D)(5) (1997). Affidavits from third-party witnesses may be submitted and considered under this rule and become part of the post-conviction record. *See,*

*e.g.*, *Slaughter v. State*, 105 P.3d 832, 834–37 (Okla. Crim. App. 2005). The OCCA will only grant an evidentiary hearing when "[t]he application for evidentiary hearing and affidavits . . . 'contain sufficient information to show . . . by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief.'" *Id.* at 835 (quoting R. Okla. Crim. App. 9.7(D)(6)).[5]

And the record demonstrates that Cannon took advantage of these procedures. Acting pro se with standby counsel, he submitted a personal affidavit in support of his post-conviction application and requested an evidentiary hearing to further develop his claims. He also asked trial counsel to substantiate his juror-contact allegations but she refused, stating "I have no recollection of anyone talking with me about witnesses or anyone else making improper contact with jurors." R., Vol. I, Doc. 218, Ex. 4. Nothing in the Oklahoma rules prevented him from attempting to obtain additional affidavits in support of his cause from family members, yet he failed to do so. After reviewing Cannon's application and personal affidavit, the OCCA concluded he had not met his burden of showing by

---

[5] Cannon argues he is entitled to an evidentiary hearing because Oklahoma's Rule 9.7(D)'s "clear and convincing" standard is unconstitutionally strict. But whatever the statute's shortcomings, it did not prevent Cannon from submitting the contested affidavits as part of his application to the OCCA. As we conclude, Cannon's failure to submit these affidavits demonstrates his lack of diligence and thus precludes us from granting him an evidentiary hearing.

clear and convincing evidence that an evidentiary hearing would result in testimony likely to be relevant to his claims.

We thus must agree with the district court that a diligent applicant would have submitted witness affidavits as part of his application for an evidentiary hearing. Cannon bore the burden before the OCCA of showing by clear and convincing evidence that the materials he wanted to add to the record were likely to support his claim that appellate counsel was ineffective. The affidavits could have established that appellate counsel never contacted the prospective witnesses. They also could have provided direct evidence that improper juror contacts actually occurred, bolstering the strength of both the ineffective trial assistance and appellate-ineffectiveness claims. This function is key, as the OCCA ultimately rejected Cannon's appellate-assistance claim after finding that the claims appellate counsel did raise "were at least equally meritorious" to the omitted ineffective assistance of trial counsel claim. *Id.* Doc. 216, Ex. 20 at 6. Finally, assuming that Cannon had been able to prove ineffective assistance of appellate counsel, he would have been given the opportunity to show the merits of his ineffective assistance of trial counsel claim. *See Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995) (applying *Strickland v. Washington*, 466 U.S. 668 (1984)).[6] Evidence establishing that the improper contacts occurred would be

---

[6] At the time of these post-conviction proceedings, the OCCA did not use the *Strickland* test for ineffective assistance claims, preferring its own standard

(continued...)

necessary for Cannon to show that he was prejudiced by trial counsel's performance.

Given the obvious relevance of eyewitness testimony to Cannon's claims, the hurdle he had to overcome to obtain an OCCA evidentiary hearing was establishing that he would actually be able to introduce such testimony at a hearing. As we said in *Cannon I*, a reasonably diligent person would not do as Cannon did and submit only a general hearsay affidavit claiming that such contacts occurred and that actual witnesses were willing to testify as to those contacts. This is especially true because the OCCA could easily interpret Cannon's failure to submit additional information from his family and friends as evidence that no improper contacts actually occurred. Because Cannon should have submitted the disputed affidavits alongside his request for an OCCA evidentiary hearing on his appellate-assistance claim, the fact that he did not do so constitutes a failure of diligence that precluded the district court from granting

---

[6](...continued)
from *Walker v. State*, 933 P.2d 327 (Okla. Crim. App. 1997). This fact does not impact our analysis. Although *Strickland* and *Walker* differ in the showing required to prove ineffective assistance of appellate counsel, both end up in the same place if that showing is made: a full review of the omitted claim on the merits. *Compare Banks*, 54 F.3d at 1516 (explaining that, under *Strickland*, "[a]ssuming [a petitioner] demonstrates ineffective appellate assistance, his procedural default will be excused and we may then review the merits of his claims"), *with Cargle v. Mullin*, 317 F.3d 1196, 1203 (10th Cir. 2003) (explaining that, under *Walker*, "[i]f ineffective assistance of appellate counsel is found in step two, the OCCA then proceeds to step three, where the omitted claim of trial error is fully reviewed on the merits").

an evidentiary hearing. And to the extent he claims witnesses would not or could not submit affidavits during collateral review, he should have explained to the OCCA that these obstacles existed but that an evidentiary hearing would allow him to obtain the required evidence.

The OCCA's finding that Cannon's ineffective assistance of trial counsel claim was procedurally barred does not undermine our conclusion. First, as we have already discussed and Cannon admits, both of his ineffective assistance claims—that is, his trial counsel and his appellate counsel claims—were dependent on the same underlying facts. *See* Aplt. Br. at 6–7.

Second, the central purpose of the diligence requirement is to give state courts their initial "rightful opportunity to adjudicate federal rights." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). By failing to seize the opportunity to submit the juror-contact affidavits in support of his appellate counsel claim, Cannon denied the OCCA its rightful opportunity to consider and resolve both his appellate-assistance and his trial-assistance claims. This is because, had Cannon succeeded in showing ineffective assistance of appellate counsel, the OCCA then would have given his ineffective assistance of trial counsel claim a full merits review despite its earlier finding that the claim was procedurally barred. *See Cargle v. Mullin*, 317 F.3d 1196, 1203 (10th Cir. 2003). In other words, the procedural bar would not have prevented review of the trial-assistance claim had Cannon demonstrated ineffective appellate assistance. Therefore, it does not

matter that his ineffective trial and appellate counsel claims are distinct: a diligent petitioner would have presented facts demonstrating ineffective trial assistance as part of his ineffective appellate assistance claim.

In sum, we agree with the district court that there were no impediments excusing Cannon's failure to develop the record during his post-conviction proceedings. Because *Williams* requires that a petitioner show he diligently developed the record in state court in order to obtain an evidentiary hearing, *see* 529 U.S. at 432, the district court did not err in denying Cannon's request for a hearing.

### 2. Merits

Despite the lack of any reliable evidence of improper contacts in the state court record, Cannon argues that we can grant him relief on the merits even without granting an evidentiary hearing. After our remand in *Cannon I*, Cannon submitted to the district court affidavits from three family members asserting that improper juror contacts had, in fact, occurred. He argues that, although he was denied an evidentiary hearing, those affidavits are now part of the record and, as a result, we can consider them as evidence proving that improper contacts occurred.

This argument, however, is foreclosed by *Cargle v. Mullin*, 317 F.3d at 1209. There, we found that 28 U.S.C. § 2254(e)(2) bars any documentary expansion of the record when the petitioner was not diligent in state court. *See id.* Because we conclude Cannon was not diligent in state court, we cannot

consider additional evidence outside the state court record. As we have already discussed, there is no reliable evidence in the record showing that improper contacts occurred. The district court was thus correct in dismissing both the trial and appellate juror-contact claims.

### B. *Right to Testify*

Cannon also argues the district court erred in rejecting his claim that he was denied his Sixth Amendment right to testify. Unlike the juror-contact claim, the district court held an evidentiary hearing to resolve disputed facts.

Every criminal defendant has the constitutional right to testify at trial and the ultimate decision of whether or not to testify belongs solely to the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Defense counsel should inform the defendant of his right and that only he can decide whether or not to testify. *United States v. Teague*, 953 F.2d 1525, 1533–34 (11th Cir. 1992) (en banc). Counsel should also explain the strategic implications of testifying and whether or not they recommend that the defendant do so. *Cannon I*, 383 F.3d at 1171. Citing these principles, Cannon argues that his trial counsel failed to inform him of his right to testify and then prevented him from testifying when he expressed a desire to do so. He also argues they wrongly told him that certain damaging evidence would be admitted for impeachment purposes if—and only if—he were to testify. He thus argues his Sixth Amendment rights were violated because he did not make a knowing and voluntary waiver of his right to testify.

Demonstrating ineffective assistance of counsel requires a petitioner prove both that counsel's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. For deficient performance, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Prejudice requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This requires that "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011).[7]

After our remand in *Cannon I*, the district court held an evidentiary hearing on the Sixth-Amendment claims to resolve disputed facts. The court made a number of factual findings, including that trial counsel had informed Cannon of

---

[7] Cannon argues that, although he has the burden of proof initially, he need only make a prima facie showing of ineffective assistance to shift the burden to the State, which then must rebut the inference that counsel was ineffective. In support of this theory, Cannon cites several cases dealing with race-based discrimination. *See, e.g.*, *Castaneda v. Partida*, 430 U.S. 482 (1977). Although a prima facie scheme makes sense for claims based on allegations of discrimination, where motive must be proved, it is not applicable to ineffective assistance claims.

his right to testify and had offered constitutionally adequate explanations of the implications of testifying. The court also found that counsel did not prevent him from testifying and, in any event, Cannon was not prejudiced by his failure to testify because he would not have offered credible testimony in his defense. Although our review of the district court's legal analysis is de novo, *Fairchild v. Workman*, 579 F.3d 1134, 1140 (10th Cir. 2009), we must acknowledge the background principle that "counsel is strongly presumed to have rendered adequate assistance." *Strickland*, 466 U.S. at 690. We review factual findings for clear error when they are the result of an evidentiary hearing. *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009).

### 1. Strickland *Deficient Performance*

Cannon contends that counsel's performance was deficient because they failed to inform him of his right to testify, prevented him from testifying when he attempted to do so, and wrongly told him that certain damaging evidence would be admitted for impeachment purposes if he were to testify. The district court found that Cannon failed to establish the factual predicate of his first two contentions, and that counsel's advice concerning the impeachment evidence was legally correct.

Our independent review of the record finds no reason to supplant either the district court's factual or legal findings.

### a. Right to Testify

At the evidentiary hearing, Cannon testified that trial counsel did not inform him of his right to testify and that they prevented him from testifying at trial when he attempted to do so. Although neither of Cannon's counsel could explicitly remember telling Cannon about his right to testify, both testified that they did recall discussing the pros and cons of testifying with Cannon and both stated they always and without exception inform clients of the right to testify. Both also denied preventing Cannon from testifying.

The district court found that Cannon's testimony was not credible for a number of reasons. The court found that Cannon's testimony contradicted other evidence and his own earlier statements, and that he was evasive on cross-examination and had an overly selective memory when it came to helpful and harmful facts. Given his extensive involvement in his defense, the court also found it unlikely that Cannon would have passively accepted any attempt to prevent him from testifying. "Credibility, of course, is a matter for the district court, not this court." *United States v. Draper*, 24 F.3d 83, 85 (10th Cir. 1994). "[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). As a result, a trial judge's "decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by

extrinsic evidence, . . . can virtually never be clear error." *Id.* Having determined that Cannon was not credible, the district court considered the testimony of trial counsel and concluded Cannon had not met his burden of proving that counsel provided ineffective assistance concerning his right to testify.

In resisting the district court's conclusions, Cannon first argues that because neither of his lawyers could specifically remember informing him of his right to testify, the district court necessarily erred by refusing to accept his uncontroverted testimony to the contrary. We disagree. Both of Cannon's lawyers testified that they always and without exception informed defendants of their right to testify and we find no error in the district court's decision to credit trial counsel's testimony on this point. In response, Cannon argues that counsel's testimony concerning their standard practices should not have been assigned significant weight because, in normal circumstances, the testimony would not have been admissible under Federal Rule of Evidence 406.[8] Rule 406 allows the admission of evidence concerning habits or routine practices, provided that sufficient foundation has been laid to establish their consistent application. More specifically, Cannon objects that neither of his attorneys testified as to how many

_____

[8] Because he elicited the testimony, Cannon does not challenge its admission, only its weight.

trials she had participated in, thus depriving the court of the ability to determine whether the claimed habit should be given any weight.

Again, we cannot find that the district court clearly erred in its decision to credit trial counsel's testimony over Cannon's. Both attorneys were experienced public defenders, one of whom is the head of capital litigation with the Tulsa County Public Defenders Office and has been with that office since 1987. Cannon's other attorney worked with that same office for over ten years. Given (1) their backgrounds and experience, (2) the presumption that counsel rendered adequate assistance, *Strickland*, 466 U.S. at 690, and (3) the district court's finding on credibility, Cannon has not established that counsel failed to inform him of his right to testify.

We likewise reject Cannon's challenge to the district court's finding that he failed to prove trial counsel thwarted his attempts to testify. Both of Cannon's trial counsel unequivocally denied telling him that he could not testify and denied preventing him from doing so. One even confirmed this point in a letter she sent to Cannon during the post-trial appeal in which she stated, "I cannot swear out an affidavit claiming I would not let you testify, because I never told you that you couldn't testify and I don't recall you informing me you wanted to testify." R., Vol. I, Doc. 218, Ex. 4. The district court also reasonably found Cannon was engaged in his defense and would not have passively accepted a refusal to allow him to testify had it occurred. In short, we see no reason to overturn the district

court's decision to credit counsel's testimony that Cannon knowingly and voluntarily declined to testify,[9] and reject Cannon's testimony to the contrary.

### b. Advice of Counsel

Cannon's second example of deficient performance is his claim that counsel incorrectly told him that if he testified he would be impeached with evidence showing a prior conviction for assault and with details of his recent escape from lawful custody. More specifically, Cannon had been convicted of assault and battery with intent to kill in 1991; a conviction which earned him a fifteen-year prison sentence. While serving that sentence, and shortly before his arrest in this case, Cannon escaped from Oklahoma Department of Corrections custody while participating in a work program. Cannon claims counsel incorrectly told him these facts would be admissible if he testified.

In addition, Cannon claims counsel entered an agreement with the prosecutor in which the state agreed it would not introduce evidence of the prior conviction or escape unless Cannon testified. He contends he was never informed of this agreement and that this prevented him from knowingly and voluntarily waiving his right to testify.

---

[9] Cannon also tangentially argues a waiver of the right to testify is ineffective unless made on the record. Nothing in this circuit, or any other, however, requires defendants to waive their right to testify on the record and we decline to adopt such a rule now. To the contrary, requiring judges to question each non-testifying defendant about his decision not to testify may result in defendants feeling pressured to give up their right not to testify. *See United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995).

The district court found that counsel provided effective assistance when they told Cannon that his prior conviction would be admissible. Under Oklahoma law, a prior felony conviction is admissible for its impeachment value if its "probative value of the evidence outweighs its prejudicial effect." *Cline v. State*, 782 P.2d 399, 400 (Okla. Crim. App. 1989). In making this evaluation, the court considers: "1. The impeachment value of the prior crime; 2. The point in time of the conviction and the witness' [sic] subsequent history; 3. The similarity between the past crime and the charged crime; 4. The importance of the defendant's testimony; and 5. The centrality of the credibility issue." *Id.* The district court concluded the prior conviction would have been admissible for impeachment.

We agree. Factors two and five point in favor of admissibility. The prior crime was, at the time of the trial, relatively recent and Cannon's credibility was crucial for the jury to assess whether or not it believed his self-defense argument. Factors one and four cut both ways. Although the relationship between a crime of violence and truthfulness is somewhat attenuated, the OCCA has repeatedly upheld the introduction of assault and battery convictions for their impeachment value. *See, e.g.*, *Shipman v. State*, 639 P.2d 1248 (Okla. Crim. App. 1982) (defendant charged with first-degree manslaughter); *Campbell v. State*, 636 P.2d 352 (Okla. Crim. App. 1981) (defendant charged with first-degree murder). As for factor four, although Cannon's testimony was naturally important, he was able

to introduce his version of events through other witnesses without testifying. Factor three cautions against admissibility. At bottom, competent counsel could conclude the evidence would likely be admitted on cross-examination if Cannon testified. Moreover, the damage the evidence would cause militated toward the strategy chosen—Cannon would not testify and his theory of self-defense would come in through the testimony of a police detective who spoke to Cannon before his arrest.

Counsel's advice on Cannon's escape presents an easier question. Cannon's own recorded statement indicated that he was afraid that the victim planned to turn him in to police once he left her apartment. The escape would have been admissible as evidence of Cannon's motive to kill Ms. Clark.

Of course, motive evidence could have been introduced even without Cannon testifying in his defense. But his counsel were able to enter into an agreement with the prosecution by which the state would not attempt to enter evidence of the escape or the prior conviction unless Cannon testified. Cannon asserts that he was never informed of this agreement and argues that counsel's failure to tell him about it prevented him from making a knowing and voluntary waiver of his right to testify. But Cannon was correctly informed that if—and only if—he chose to testify, the state would seek to admit evidence of his prior felony and escape, and would likely be successful in doing so. Even if he were not informed of the details of any agreement, his counsel provided

constitutionally sufficient advice for him to knowingly evaluate his right to testify.

In sum, we cannot conclude that counsel's performance was constitutionally deficient or that Cannon's waiver was involuntary. He was adequately informed of the consequences that would result from testifying.

### 2. Strickland *Prejudice*

Even though *Strickland* requires that Cannon establish both deficient performance and prejudice to obtain relief, having found no deficient performance, the district court went on to evaluate whether he was prejudiced by his failure to testify. For completeness, we review that conclusion.

Prejudice requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This requires that "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

The district court concluded that Cannon was not prejudiced by his failure to testify at trial because "his [evidentiary hearing] testimony was so untrustworthy and so inconsistent with other credible evidence that it was not substantially likely his testimony would have changed the result of the trial." R., Vol. I, Doc. 300, at 34. The court went on to state that "Cannon's inability to

handle cross-examination—his evasive and uncooperative demeanor—would have rendered him a wholly ineffective witness." *Id.* The court also found that Cannon's account of the murder "strain[ed] credulity beyond reasonable limit." *Id.* Finally, the court noted that, had Cannon testified, his prior conviction and potentially his escape from custody would have come into evidence, further harming his defense.

Cannon advances a number of objections to these conclusions. In summary, he contends the district court erred in finding that his testimony at the evidentiary hearing was inconsistent with his prior tape-recorded statement to a police detective. As Cannon explains it, the recorded conversation gives only a partial version of events. He says his testimony only deviated from the tape because he was filling in the blanks. He further argues that, where his testimony was contradicted by other evidence, the inconsistencies were inconsequential.

We have reviewed all of Cannon's objections to the district court's credibility finding and see no error. Suffice it to say, the inconsistences between the record evidence, including his recorded statement, and his evidentiary hearing testimony support a conclusion that Cannon would not have advanced his cause by testifying at trial. Nor do we find any error in the district court's conclusion that Cannon was evasive on cross-examination. For the reasons set forth by the district court, Cannon cannot show he was prejudiced by his failure to testify at trial.

## III. Conclusion

The district court's denial of Cannon's petition for a writ of habeas corpus is AFFIRMED.