FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 2, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MIKEAL GLENN STINE,

    Defendant - Appellant.

No. 17-1368
(D.C. No. 1:16-CV-02740-CMA)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

Defendant Mikeal Glenn Stine seeks a certificate of appealability (COA) to appeal the dismissal by the United States District Court for the District of Colorado of his motion under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal denial of relief under § 2255). Because no reasonable jurist could debate the district court's disposition of Defendant's claims, we deny a COA and dismiss the appeal.

In August 2015, Defendant was convicted by a jury on two counts of threatening a United States Magistrate Judge and one count of threatening an assistant United States attorney in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4). Defendant appealed and this court affirmed. *See United States v. Stine*, 664 F. App'x 697, 698 (10th Cir. 2016).

Defendant filed his § 2255 motion in November 2016, claiming that his counsel was ineffective in four respects: (1) failing to assert Defendant's speedy-trial right; (2)

failing to retain a handwriting expert to examine the threatening letters or to call favorable witnesses identified by Defendant; (3) failing to cross-examine all the government's witnesses; and (4) failing to allow Defendant to testify. The district court denied relief on the merits of all claims[1] and also denied his request for appointment of counsel and a private investigator.[2]

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

---

[1] The district court appears to have held that the first three ineffective-assistance claims were also barred because they were not raised on direct appeal. That ground, however, could not be sustained. The Supreme Court has held that ineffective-assistance-of-counsel claims need not be raised on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."); *United States v. Erickson*, 561 F.3d 1150, 1170 (10th Cir. 2009) ("Even before *Massaro* this circuit had held that it is never necessary to bring an ineffectiveness claim on direct appeal because collateral proceedings under 28 U.S.C. § 2255 are almost always preferable.").

[2] The record indicates that Defendant also filed in district court a motion for reduction in sentence under Fed. R. Crim. P. 35(b), but the denial of that motion is not at issue in this appeal.

To prevail on his ineffective-assistance claims, Defendant must show both that his counsel's performance was deficient—"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and that "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In undertaking this analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Particularly relevant here:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91. Further, to establish that a defendant has been prejudiced by counsel's deficient performance, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "In making this determination, a court . . . must consider the totality of the evidence before the judge or

3

jury," recognizing that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695–96. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. "Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats the ineffectiveness claim." (emphasis added)). *Id.* at 700.

We can easily dispose of the ineffective-assistance/speedy-trial claim on *Strickland*'s prejudice prong. As the district court noted, this court determined on Defendant's direct appeal that his speedy-trial rights were not violated. *See Stine*, 664 F. App'x at 701–03. Defendant could not have been prejudiced by failure to raise an issue that was doomed to fail. *See Dennis v. Poppel*, 222 F.3d 1245, 1261 (10th Cir. 2000).

The remaining claims concern strategic and tactical decisions in the trial. The district judge who denied Defendant's § 2255 motion, who had also presided at Defendant's trial, noted that the "government called five witnesses and presented overwhelming evidence of Defendant's guilt." R., Vol. I. at 123. In particular, an FBI agent testified that Defendant had confessed to sending the letters. Defense counsel's strategy therefore focused on Defendant's scienter, contending that the letters were not serious and he wrote them just to bring attention to what he viewed as his unfair treatment by the federal Bureau of Prisons. Such a strategy would render it unnecessary, or even counterproductive, to challenge much of the government's case—it could weaken the credibility of Defendant's argument that he did not intend the letters as threats if he

4

also denied writing them. Given *Strickland*'s mandate that we defer to properly informed strategic decisions by trial counsel, no reasonable jurist could debate the district court's rejection of Defendant's second and third ineffective-assistance claims. The overall defense strategy explains the decision not to call witnesses identified by Defendant or to seek a handwriting expert to challenge whether Defendant signed the threatening letters; and it also explains why defense counsel cross-examined the witnesses he did: questioning those able to discuss Defendant's intent and not questioning those who would be unable to advance the strategy.

Defendant's fourth claim—that his counsel refused to allow him to testify— requires some additional discussion. A criminal defendant has the constitutional right to testify in his own defense. *See Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004). This prerogative is the defendant's alone, and "counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy." *Id.* Thus, if Defendant's factual allegation is true and his attorney prevented him from testifying at trial, then the attorney's performance was deficient. But Defendant must still satisfy the prejudice prong of the *Strickland* test. *See Cannon v. Trammell*, 796 F.3d 1256, 1275 (10th Cir. 2015) (holding that there was no prejudice in preventing defendant from testifying because "the inconsistences between the record evidence, including his recorded statement, and his evidentiary hearing testimony support a conclusion that Cannon would not have advanced his cause by testifying at trial"). Defendant argued below and in this court that he wished to testify, not regarding his intent, but to show that circumstances made it impossible for him to have written or

5

mailed the threatening letters. This would have been a futile venture. This claim fails on the prejudice prong because the failure to call Defendant as a witness does not come close to undermining confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694.

In sum, no reasonable jurist could debate that the district court properly rejected Defendant's ineffective-assistance claims. Finally, we see no abuse of discretion in the district court's denial of Defendant's request for counsel or for a private investigator to assist him in the § 2255 proceedings.

We **DENY** Defendant's application for a COA and **DISMISS** this appeal. We **GRANT** Defendant's motion for leave to proceed *in forma pauperis*.

Entered for the Court


Harris L Hartz
Circuit Judge

6